MR. ROY L. PERRY-BEY
89 LINCOLN STREET #1772 - HAMPTON, VA 23669
Tel: (917) 941-3352

August 5, 2019

Fernando Galindo, Clerk of Court
Walter E. Hoffman
United States Courthouse
600 Granby Street
Norfolk, VA 23510

**Re: 219cv344** Roy L. Perry-Bey, *et al.*, v. Mark T. Esper, *et al.*,

Dear Mr. Galindo:

Enclosed please find Plaintiffs' corrected pages to amended complaint inadvertently submitted due to minor clerical errors and oversight as follows, PG.5 3RD LINE, 4TH WORD: corrected "symptoms" instead of systems PG. 8 2ND LINE: Instead of has not, changed to "was not. recognized as having 3RD LINE: experienced severe" PG. 11. Minor correction She "was damage goods" PG. 14 9TH LINE FROM THE BOTTOM: (deleted "Ho" )(next to the word Honorable) 3RD LINE FROM THE BOTTOM:(Corrected to: "day to day") PG. 15 1ST LINE AT TOP:(spacing corrected between the words: "from the") 10TH LINE FROM THE BOTTOM, AFTER THE 7TH WORD CORRECTED: ("severely under threat")PG. 16 10TH LINE FORM THE TOP, 6TH WORD: (change <u>Until</u> to say "until")  PG. 17 1ST LINE CHECK SPACING BETWEEN: ("Taylor who") PG. 18 5TH LINE FROM THE TOP:(added an s to say "experiences")PG. 38  paragraphs 60-62 (was duplicating) PG. 39 paragraphs 60-62 (duplication corrected)PG. 51 PARAGRAPH 119, 2ND LINE FROM THE BOTTOM: (spacing corrected between "when" and "the") PG. 52 LAST LINE SPACING CORRECTED BETWEEN: ("injury" and "or"), filed on July 30, 2019, to be replaced in complaint as if originally filed in the above referenced matter, which I ask that you please present to the Honorable Raymond Jackson, Judge.

Thank you for your kind assistance in this matter.

Very truly yours,

Mr. Roy L. Perry-Bey

# CERTIFICATION OF SERVICE

I hereby certify that on the 5th day of August, 2019, a true copy of the foregoing was mailed, postage prepaid, via USPS to the below Plaintiffs.

By _____
MR. ROY L. PERRY- BEY
89 LINCOLN STREET #1772
HAMPTON, VIRGINIA 23669

Mr. Phillip Webster
542 Briar Hill Road,
Norfolk, VA 23502

Mr. George Bowe
1028 King Arthur Drive
Chesapeake, VA 23323

Mr. Anthony Harold
613 Goff Street,
Norfolk, VA 23510

Mr. Robert Simpson
1574 North King Street,
Hampton, VA 23669

Mr. Clarence Lawson
2050 Kennedy Street,
Chesapeake, VA 23322

Ms. Mary E. Hill
P.O. BOX 6008
Suffolk, VA 23433

Esper L. Hurdle, Jr.
1107 Freedom Avenue
Portsmouth, VA 23701

Ernest W. Gibbs
904 Broad Meadows
Virginia Beach, VA 23462

Walter Watson
904 Broad Meadows Apts
Virginia Beach, VA 23462

Anthony Elliott
5440 Barnhollow Road
Norfolk, VA 23502

Cornell Morris
138 Coldtaine Court
Portsmouth, VA 23791

John G. Taylor
904 Broad Meadows Apts
904 Broad Meadows
Virginia Beach, VA 23462

Mr. Neal C. Morrison, Jr.
3504 Executive Center Drive Apt 302,
Chesapeake, VA 23321

Lawrence Taylor
904 Broad Meadows Apts
Virginia Beach, VA 23462

Ronald M. Green, as Special Personal
Representative of the Estate of Wendell Alonzo Willis
5540 Barnhollow Road
Norfolk, VA 23502

Dr. Vivian A. Anderson
1812 Gannet Court,
Chesapeake, VA 23320
(757) 831-0899

Mr. Daniel DeLoach
967 Ingleside Road
Norfolk, VA 23502

After experiencing intense combat-and the death of many close friends and other crew members loss of life and body parts, Mr. Webster began struggling with common symptoms of Severe Post Traumatic Stress Disorder (PTSD), such as nightmares, flashbacks, hyper vigilance, deep depression, sleep deprivation, and witnessing suicide episodes which cause him to indulge in substance abuse with Alcohol and other drugs to suppressed what he witness during his career within the U. S. Navy.

Once back home and retired, these symptoms of PTSD worsened. He experienced severe anxiety and rapid mood swings and like many with PTSD, he took medication trying to reduce what he was enduring in order to cope with what he experienced for 20 years of serving in the U. S. Navy.

When he applied for VA Benefits, he only received 20% and denied all other ailments relating to service connected ailments endured while enlisted within the U.S. Navy.

Mr. George Bowe served his country with distinction from May 10, 1977 until January 16, 1979, at the age of 21. He was discharged with Under-Other-Than-Honorable-Condition.

Mr. Bowe was a PV1 E1 experienced intense prejudice and severe Post Traumatic Stress Disorder, severe anger, nightmares, flashback, severe sleep deprivation, fear and went AWOL. He felt hopelessly afraid of being locked up for an incident that was of no fault of his own. He had been set up by holding a bag that had drugs within. Another Soldier had asked him to hold his

Mr. Anthony Harold who served his nation, yet experience hardship due to not receiving Medical Records were lost and he was not recognized at having experienced serve hardship throughout his life after being discharged. He has only received a VA Pension which is very low.

The Veteran Affairs denied his claim for VA Benefits due to his records being lost or missing.

DAV Robert L. Simpson served in the U. S. Army with distinction from November 16, 1965 until October 15, 1967, he was discharged with a Physical Discharge rather than what he should have received as a Medical Discharge due to the Seizures that he acquired while being subjected to severe training that caused Migraine Headaches. He warned his superiors about the headaches, but he was ignored until they became so severe he had to be hospitalized.

His physician recommended that he be discharged with a Medical Discharged, but he received a Physical Discharged, meaning that he wasn't physically fit to continue in the U. S. Army.

When Mr. Simpson filed for his VA Benefits, he was denied and received a Veterans Pension. After the Pension reached $98,000, Mr. Simpson was told that he had to repay the VA and that they would take his Social Security.

Dr. Vivian Anderson, wrote a letter to the Under Secretary, who sent a message to me stipulating that they thanked me for bringing that to their attention, and the funds were waived. However, Debt Management of the VA contacted Mr. Simpson to state that he couldn't use Dr. Anderson to assist

Lackland, AFB in San Antonio, Texas. Ms. Hill was informed she was "damaged goods" and Honorable Discharged.

Ms. Hill was in the barracks and had complained to the Drill Sergeant she was having pain in her back and it was excruciating the Drill Sergeant started yelling and spitting in her face. He began screaming and accused Ms. Hill that she was trying to get out of duty. She was not. Ms. Hill went to medical at Lackland and they ran test. Medical prescribed pain pills and Ms. Hill was placed on restricted duty and sent back to her barracks. While She was in the barracks alone, Ms. Hill was sexually assaulted or abused by the unit Drill Sergeant.

After the MST, Ms. Hill was afraid to tell anyone. She did not think anyone would believe her as an African American Female, especially since it was the Drill Sergeant who sexually assaulted her and he was a White Male. He was the one who had already accused Ms. Hill of lying about her back.

Ms. Hill was sent back to medical because she was not getting better, since She could not participate in the physical training. She was asked about her back and if She had problems before the military. She never had any prior back pain to the point of chronic pain when She entered service or to the point that She was experiencing in basic training. Ms. Hill was told it was a condition that existed prior to service. That is not true. She was given a full entry examination.

DAV Hurdle, Jr. began struggling with severe symptoms of Post-Traumatic Stress Disorder (PTSD), such as nightmares, mood swings, deep and severe depression, severe anxiety, anger, flashbacks and nightmares of continuously falling in a hole and never getting out.

As many like DAV Hurdle, Jr. once back home, these symptoms worsened. DAV Hurdle, Jr. experience severe bouts of PTSD and, like many with PTSD, he self-medicated with an dangerous drugs until his is nearly abled to walk without falling.

Volunteers Improving Virginia's Standards Community Development Corporation is a Corporation located in Chesapeake, Virginia and serves and advocates for Disabled American Veterans(DAVS) with Honorable or Other - Than-Honorable Discharges. Its DAVS which includes DAV Hurdle, Jr. who served his nation well, yet experience hardship due to being denied VA Benefits with being totally disabled and received an Honorable Discharge.

DAV Ernest W. Gibbs served his country with distinction in the U. S. Army from August 8, 1976 until August 8, 1979, at just 19 years old. E4.

Mr. Ernest W. Gibbs was already an E4 and began struggling with common symptoms of Post-Traumatic Stress Disorder (PTSD), such as nightmares, flashback, loud ringing in he ears, severe Sleep Deprivation, Heart Attack, anger, coping from day to day and hyper vigilance.

Once back home, these symptoms worsened. He experienced severe anxiety and rapid mood swings and, like many with PTSD, he tried to cope, but

realized that he had to seek aid from the VA in order to keep from using Alcohol and other drugs other than prescribed medication.

Volunteers Improving Virginia's Standards Community Development Corporation is a Corporation located in Chesapeake, Virginia that serves and advocates for Disabled American Veterans(DAVS) with Honorable or Other - Than-Honorable Discharges. It's DAVS include DAV Gibbs who served his nation well, yet experience hardship of not acquiring his VA Benefits with severe service connected ailments, but acquired his Honorable Discharge.

DAV Walter Watson served his country with distinction from August 10, 1976 until March 10, 1976, as a E1 to E4 in the U. S. Army. He received Other-Than-Honorable-Condition.

After experiencing hardships while serving, DAV Watson found it hard to adjust to serving his country due to severely being under threats and duress he began struggling with severe Post Traumatic Stress Disorder such as deep and severe depression, severe Sleep Deprivation of restless nights with fear and mindful duress, anger, coping from day to day and even after DAV Watson soon found himself drowning in Alcohol to drown out the thoughts that troubled him to no end even when he was discharged, which included service connected ailments.

DAV Anthony W. Elliot served his country with distinction from April 15, 1985 until April 15, 1993, as a PLC E3 in the U. S. Army National Guard. Mr. Elliot later was transferred to Fort Gordon in Augusta, Georgia, to receive AIT Lineman

Telephone Switch Board training where during around the middle of the eight (8) week course, Mr. Elliot had fallen from an eighteen (18) to twenty (20) foot telephone pole injuring his left foot and neck, leaving him shocked and traumatized. Subsequently, Mr. Elliot personal injury claim filed in 1995, and his PTSD claim in 2018, for service connected disability compensation for injury or mental health conditions incurred or aggravated during his military service was denied. Mr. Elliot continues to suffer with sever neck, foot and PTSD related conditions, depression and anxiety disorder. He received an Honorable discharge.

DAV John G. Taylor served his country with distinction in the U. S. Army from November 11, 1978 until December12, 1979. At just 18 years old. DAV Taylor was a SPC 4.

After experiencing intense training and since he has been discharged, DAV Taylor has experience severe PTSD and severe Sleep Deprivation. He began struggling with common symptoms of Post-Traumatic Stress Disorder (PTSD), such as anxiety, deep depression, nightmares and hyper vigilance. Once back home, these symptoms worsened. In addition, he experienced severe rapid mood swings and, like many with PTSD, he struggled with trying to cope on a daily basis with the severe PTSD he tried to live with and has been denied his due benefits.

Volunteers Improving Virginia's Standards Community Development Corporation is located in the city of Chesapeake, Virginia that serves and advocates for Disabled American Veterans(DAVS with Honorable or less-than-

Honorable discharges. Its DAVS include DAV Taylor who served his nation well, yet experience hardship due to being denied over and over again to qualify for his VA Benefits with an Honorable Discharge.

DAV Lawrence Taylor served his country with distinction in the U. S. Army, from November 11, 1976 until December 12, 1979, at just18 years old and a MOS1C10.

After experiencing heavy artillery for three years while enlist and indirect fire from the gunnery, he was exposed to heavy radio active machinery that has been the reason for his severe heart problems, because he has had extensive surgery and there are items placed in his heart in order for him to maintain life.

DAV Taylor began struggling with severe symptoms of Post-Traumatic Stress Disorder (PTSD), such as nightmares, flashbacks, anxiety, severe fear of having more heart problems due to the heavy exposure to the radiation without any proper protection.

Once back home, these symptoms worsened. DAV Taylor experienced severe anxiety and rapid mood swings and, like many with severe PTSD, he had to endure a severe heart attack and as previously stated above, he constantly live with the thought of having to die before time taking large amounts of medication, but denied the very VA Benefits that he needs in order to prolong his life.

Volunteers Improving Virginia's Standards Community Development Corporation is a Corporation located in Chesapeake, Virginia and serves and advocates for Disabled American Veterans (DAVS) with Honorable or Other - Than-Honorable Discharges. Its DAVS) which includes DAV Taylor who served his nation well, yet experience hardship due to being denied VA Benefits with an Honorable Discharge.

DAV Neal C. Morrison, Jr. served his country with distinction in the U. S. Army, from May 28, 1975 until March 28, 1985, at just 21 years of age as a SPC E3.

After experiencing intense combat during a training exercise (War Games) a tank accidently drove over a cliff and landed upside down. The tank commander was pinned under the tank. I and a few other Soldiers tried to keep him calm. All this time he was dying before our eyes, screaming for help and severely bleeding from his wounds to death. There was nothing that we could do to assist him from the tragedy and to this day, I can still smell his blood.

At great physical and personal risk, I personally Court Martial a group of drug dealers, who were Active Duty personnel. This was my duty and obligation to my country. Each of them vowed that they would take their revenge on me and my family. No matter how long it would take them. These men said they are coming after me and my family for placing them in the Military Prison. I live in fear of my life and the life of my family. Now these men are out of prison and it has kept me in fear ever since they warned me.

associated with the trauma, and hyper vigilance, which often manifests in difficulty concentrating and irritability.

57.  According to the VA, 11 percent of Afghanistan veterans and 20 percent of Iraq veterans suffer from PTSD. Similarly, 10 percent of Gulf War veterans and 31 percent of Vietnam veterans have PTSD.

58.  Researchers estimate that approximately 16 percent of service members experience MST during their service. Victims are four times more likely to suffer from PTSD compared to veterans with no sexual-assault histories.

59.  Researchers have found that, among U.S. Marines deployed to Iraq and Afghanistan, Marines with a diagnosis of PTSD were eleven times more likely to have a misconduct discharge compared to their peers who did not have a psychiatric diagnosis.

60.  The Government Accountability Office estimates that from 2011 to 2015, more than 57,000 service members were separated from the military for misconduct despite a diagnosis of PTSD, TBI, or another mental health condition that could be associated with misconduct.

61.  This amounts to over 62 percent of all service members separated for active duty injury or misconduct during the same period.

62. The Government Accountability Office, DOD Health: Actions Needed to Ensure Post-Traumatic Stress Disorder and Traumatic Brain Injury Are Considered in Misconduct Separations, GAO 17-260 (May 2017) ("GAO Report"). available at https://www.gao.gov/assets/690/684608.pdf

63. The military frequently fails to comply with its own screening, training, and counseling policies related to PTSD and TBI. Out of 48 Marine Corps separation packets reviewed by the GAO, eighteen lacked documentation showing that the service member had been screened for PTSD and TBI. GAO Report, at 24. The Army or Navy lacks a PTSD screening policy consistent with Department of Defense requirements. Id. at 24.

64. Mental health issues and diagnoses carry pervasive societal stigma that often deters individuals from seeking the help they need. This stigma is no less acute within the military.

65. The Army, Air Force, Navy or Marines Corps have long shared a culture of downplaying the severity and pervasiveness of active duty injury or PTSD while stigmatizing those who seek compensation or treatment.

117. The U.S. Department of Veterans Affairs, ARBA or NDRB's secret policy that discriminates against applicants who suffer from active duty injury or PTSD is contrary to Plaintiffs' constitutional rights and in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

## CLAIM VI

**Violations of the Administrative Procedure Act, 5 U.S.C. § 706(2)(C) Agency Action in Excess of Statutory Authority or Short of Statutory Right**

118. Plaintiffs incorporates all their prior allegations of the preceding paragraphs are incorporated by reference as if they were fully set forth herein.

119. In establishing the NDRB, Congress recognized that an Other-than-Honorable discharge issued to maintain military discipline should not be a life sentence when a veteran has not acted out of moral turpitude, especially when the veteran's underlying misconduct may be attributable to the stressors of combat and mental health conditions. 10 U.S.C. § 1553.

120. Congressional intent in establishing review boards such as the NDRB was to protect veterans with Other-than-Honorable discharges from being unjustly burdened with such life sentences.

121. The NDRB and ADRB are both governed by the same Department of Defense statute, regulations, and guidance defining the standards for discharge upgrades.

122. Yet, the ADRB grants discharge upgrades at nearly four times the rate that the NDRB does.

123. The Army and Navy's comparatively low grant rate shows that Army and Navy veterans are being denied their statutorily-mandated access to service-connected compensation or the discharge upgrade procedures set forth by Congress and implemented by the Department of Defense.

124. In its virtually categorical denial of service-connected compensation or PTSD-related discharge upgrade applications, the Defendants has failed to carry out Congress' intent in establishing the Discharge Review Boards and setting forth their governing standards, thereby exceeding its authority, and has fallen short of vindicating the statutory right Congress created for veterans, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(C).

## CLAIM VII
### Violations of the Administrative Procedure Act

125. Plaintiffs incorporates all their prior allegations of the preceding paragraphs are incorporated by reference as if they were fully set forth herein.

126. Defendants' denial, through the U.S. Department of Veterans Affairs, ARBA or NDRB of DAV Roy L. Perry-Bey, Phillip Webster, George Bowe, Anthony Harold, Robert Lee Simpson, Clarence Lawson, Mary E. Hill, Cornell Morris, Esper L. Hurdle, Jr., Earnest W. Gibbs, Walter Watson, Anthony Elliot, John G. Taylor, Lawrence Taylor, Neal C. Morrison, Wendell Alonzo Willis and Mr. Daniel DeLoach's service-connected injury or discharge upgrade application is a final agency action.